UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COAST-TO-COAST PRODUCE, LLC,
FRESH ALLIANCE, LLC, and
GLOBALMEX INTERNATIONAL, INC.,

      Plaintiff,       Case Number 23-10408
v.              Honorable David M. Lawson

LAKESIDE PRODUCE USA, INC.,
LAKESIDE PRODUCE INC. a/k/a
ONTARIO CORPORATION NUMBER
860992, CHRISTOPHER R. CERVINI,
and BAKHOS ANTONIOS,

      Defendants.
_____/

## OPINION AND ORDER DENYING MOTIONS TO DISMISS, GRANTING IN PART MOTION FOR JUDICIAL NOTICE, AND DISSOLVING STAY OF DISCOVERY

These consolidated cases concern the efforts of the Coast-to-Coast parties (Coast-to-Coast Produce, LLC, Fresh Alliance, LLC, and Globalmex International, Inc.) to collect on invoices for produce that was sold and delivered in the latter half of 2022, to the tune of over $1.3 million. These plaintiffs sued Lakeside Produce USA, Inc. ("Lakeside USA"), Lakeside Produce Inc. a/k/a Ontario Corporation Number 860992 ("Lakeside Canada"), and their principals as the purchasers of the produce to enforce the plaintiffs' rights under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a *et seq.* In a race to the courthouse, Lakeside USA filed a declaratory judgment action asking for a determination that it was not liable to the plaintiffs under PACA. And the plaintiffs' collections efforts are complicated by a proceeding that Lakeside Canada filed in a Canadian bankruptcy court. The parties have filed several motions in an effort to eliminate or streamline the claims. After hearing oral argument on September 13, 2023, the Court dismissed Lakeside USA's declaratory action because all the issues raised in that case are presented in this

coercive action.  Now, the Court concludes that it may take judicial notice of certain records, the Court has subject matter jurisdiction over the coercive action against all defendants, the proceeding against Lakeside Canada is not barred by any stay provisions in the Canadian bankruptcy or by international comity, there is no need to join the Bank of Montreal or other parties adjudicate the PACA claims, and the plaintiffs' complaint states viable claims against all the defendants.  The motion to take judicial notice of certain records will be granted in part, and the motions to dismiss will be denied.

## I.

Because the motions before the Court are based on Federal Rule of Civil Procedure 12(b), the following facts are taken from the complaint and those of which the Court may take judicial notice under Federal Rule of Evidence 201(b).

## A.

Plaintiffs Coast-to-Coast Produce, LLC, Fresh Alliance, LLC, and Globalmex International, Inc. are all commercial wholesale produce distributors.  Defendants Lakeside USA and Lakeside Canada are produce companies who allegedly transacted with plaintiffs.  The plaintiffs refer to them collectively as the "Lakeside Companies."  Lakeside USA is a Michigan corporation with a principal place of business in Taylor, Michigan, and Lakeside Canada is an Ontario corporation with its principal place of business in Leamington, Ontario.

The plaintiffs aver that they collectively sold the defendants more than $1.3 million in produce, mostly peppers, cucumbers, and tomatoes, between August 24 and December 17 of 2022.  The plaintiffs allege that the Lakeside Companies accepted the produce but have failed to pay despite repeated demands.

The relationship between the two defendant entities is in dispute, but the plaintiffs allege that Lakeside Canada owns Lakeside USA and controls its operations. At the helm of the organization are defendants Christopher Cervini, who the plaintiffs allege is an "officer, director, and/or shareholder," and Bakhos Antonios, the alleged director of operations of the Lakeside Companies. The plaintiffs note that both Lakeside entities share a single PACA license number and that the entities have used United States and Canadian addresses inconsistently and interchangeably in their dealings with the parties and in prior legal cases. For instance, in filings with the Texas Secretary of State, Lakeside USA has used an Ontario address also used by Lakeside Canada, but in filings with the Texas Comptroller it has used a Michigan address. Most of the plaintiffs' invoices specify that they sold produce to "Lakeside Produce, Inc." In some invoices, both a United States and a Canadian address are listed for "Lakeside Produce, Inc." As one example, a GlobalMex invoice states that its produce shipment is billed to an Elizabeth Tavares at an Ontario address but shipped to Elizabeth Tavares at a Michigan address. On January 17, 2023, Lakeside Canada filed for bankruptcy in Ontario, Canada. In a preliminary assessment, the Canadian bankruptcy trustee listed each of the plaintiffs as among Lakeside Canada's unsecured creditors.

However, in the 2022 declaratory judgment case, Lakeside USA alleges that it is not a produce buyer or seller, and that it is not owned by Lakeside Canada. Rather, Lakeside USA states that it provides "cold storage, cross-docking, inventory control, and other such services," and that Lakeside Canada is its customer. It alleges that none of its income is derived from the purchase or sale of produce; it comes from per box charges for its storage, repacking and loading services. Lakeside USA's locations in Michigan and Texas — in which it states Lakeside Canada has no property interest — are used to unload, store, repackage, and prepare produce for shipment to

customers in the United States and Canada.  Lakeside USA further alleges that it never received any of the unpaid invoices identified by Coast-to-Coast in a pre-litigation demand letter.

B.

The crux of the plaintiffs' complaint invokes the Perishable Agricultural Commodities Act. Congress enacted the Perishable Agricultural Commodities Act (PACA) to protect produce sellers, who are an "especially vulnerable class" of merchants.  *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010, 1013 (6th Cir. 1993).   To secure payment, the law imposes a statutory trust in favor of unpaid produce sellers over all of the buyer's inventory "of food or other products derived from perishable agricultural commodities" and "any receivables or proceeds from the sale of such commodities or products."  *Id.* at 1012 (quoting 7 U.S.C. § 499e(c)(2)).  The seller's trust interest is superior to any other lien or security interest in the inventory.  *Ibid.*  This is a "floating" trust, and the PACA debtor "has the burden of showing that disputed assets were not acquired from the sale of produce or produce-related assets."  *Id.* at 1014; *Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 707 (2d Cir. 2007).

PACA also imposes personal liability on a corporation's individual shareholders, officers, and directors who can control trust assets and fail to do so.  *Six L's Packing Co. v. Beale*, 524 F. App'x 148, 156 (6th Cir. 2013).  The use of trust assets for any purpose, besides re-paying the seller, can be a dissipation, but a plaintiff must show that the assets held by the buyer could not cover the debt.  *Id.* at 156 n.7.  The Department of Agriculture's regulations define "dissipation" to include "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."  7 C.F.R. § 46.46(a)(2).

Finally, PACA makes it unlawful for produce dealers and merchants to engage in certain unfair or misleading conduct or to refuse to make full and prompt payment. 7 U.S.C. § 499b. Such unlawful conduct gives rise to a claim "for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a).

Invoking the various sections of this statute, the plaintiffs filed a complaint that is divided into 12 counts, some of which state discrete theories of liability and others that merely identify remedies. Count I, for instance, states no cause of action but asks the Court to impose injunctive relief. Counts II, III, and IV accuse both Lakeside USA and Lakeside Canada of failing to maintain the PACA trust, failing to make prompt payment, and unfair conduct under 7 U.S.C. § 499b, respectively. Count V again does not state a cause of action; instead, it alleges that Lakeside USA and Lakeside Canada are *alter egos* of one another. Counts VI and VII accuse defendants Cervini and Antonios, respectively, of the unlawful dissipation of trust assets and seek to impose personal liability. Counts VIII and IX charge Lakeside Canada with the unlawful dissipation of trust assets by a controlling company and unlawful receipt and retention of PACA trust assets. Count X accuses Lakeside USA of unlawfully receiving trust assets. And Count XI pleads a breach of contract claim against both Lakeside entities. Count XII seeks interest and attorney's fees from all defendants.

## II.

As noted above, Lakeside Canada has filed for bankruptcy in a Canadian bankruptcy court. The defendants contend that this pending bankruptcy requires that the present case be dismissed for several reasons. First, they say that because the PACA trust *res* is subject to the jurisdiction of the Canadian court, this Court cannot have subject matter jurisdiction over the trust property. The defendants also maintain that this case cannot proceed because the Canadian bankruptcy imposes

an automatic stay against Lakeside Canada's creditors' collection actions. The defendants also assert that international comity counsels against moving forward with this action. Finally, they contend that the failure to join in this action the Bank of Montreal, apparently a creditor in the bankruptcy case, as well as other putative PACA claimants, requires dismissal because they would be necessary parties here.

A.

For its jurisdictional argument presented under Federal Rule of Civil Procedure 12(b)(1), the defendants rely primarily on *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939), a case that articulated the "prior exclusive jurisdiction" doctrine, as it is characterized by some courts. *See Chapman v. Deutsche Bank Nat. Tr. Co.*, 651 F.3d 1039, 1043–44 (9th Cir. 2011). *Princess Lida* dealt with the authority of a federal court to adjudicate claims that required the management of a trust after a state court had entered a decree and retained jurisdiction over that trust. The Court held that if two actions are *in rem* or *quasi in rem*, when a state court first assumes jurisdiction over the property at issue in a claim subsequently filed in federal court, the state court maintains its jurisdiction over the property to the exclusion of the federal court, thereby depriving the federal court of subject matter jurisdiction. *Princess Lida*, 305 U.S. at 466 (holding that "if the two suits are in rem, or quasi in rem, so that the court . . . must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought[,] the jurisdiction of the one court must yield to that of the other"). "The doctrine is necessary," the Court said, "to the harmonious cooperation of federal and state tribunals." *Ibid.*

This jurisdictional allocation is not necessary, however, if the competing actions are *in personam*. In that circumstance, "both the state court and the federal court, having concurrent

jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Ibid.*

Invocation of the *Princess Lida* doctrine in this case presents two questions. One is whether the plaintiffs' actions are *in personam* on one hand, or *in rem* or *quasi in rem* on the other. *Cartwright v. Garner*, 751 F.3d 752, 761-62 (6th Cir. 2014). An overriding issue, though, is whether the doctrine actually applies when one of the competing tribunals is a court of another nation. *See Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991).

On the first question, to determine whether an action is *in rem* or *quasi in rem*, a court must consult state law. *Griffin v. Hope Federal Credit Union*, 810 F. App'x 450, 452 (6th Cir. 2020) (citing *United States v. $714,206.00 in U.S. Currency*, 320 F.3d 658, 661 (6th Cir. 2003)); *see also Chevalier v. Est. of Barnhart*, 803 F.3d 789, 802 n.7 (6th Cir. 2015). The defendants argue that because the plaintiffs' PACA claims involve a statutory trust, *see* 7 U.S.C. § 499e(c)(4), the action is *in rem*.

The leading Sixth Circuit case discussing the doctrine involved a plaintiff who filed an action in a Tennessee state court seeking the replacement of the trustee of a trust in which he was a beneficiary and other relief. *Cartwright*, 751 F.3d at 755-56. While those claims progressed, the plaintiff also filed a federal lawsuit, alleging that several defendant partnerships and companies had committed torts related to the trust, including conversion, misrepresentation, mismanagement, and conspiracy. *Id.* at 756-57. The district court dismissed the case for lack of subject matter jurisdiction, invoking *Princess Lida*. *Id.* at 757-58. Affirming the dismissal, the court of appeals noted that the allegations in the plaintiff's complaint suggested it was really a *quasi in rem* action regarding trust administration. *Id.* at 762.

The defendants imply that this result should be read to require that all claims involving trusts where a state court action is first filed are barred by *Princess Lida*, but the facts of the case suggest a more limited holding. First, the court noted that the trust in that case specifically permitted the investments that the plaintiff disputed. Therefore, his claims for tortious conduct were really claims about trust management, investment, and distribution decisions. *Ibid.* Second, the defendant entities, whose assets would be needed to effectuate the plaintiff's requested remedy, were already subject to the jurisdiction of the Tennessee court. *Ibid.* Therefore, *Cartwright* is best understood as restating the general rule that a Court has no jurisdiction to entertain an *in rem* or *quasi in rem* action when a state court has previously exerted jurisdiction over the *res*, rather than stating a general rule about all trust claims.

"An *in personam* action is an action brought against a person rather than property." *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (cleaned up). Actions "for breach of contract, default, unjust enrichment, and fraud" are all *in personam* actions. *Id.* at 802. It is true that some courts have characterized their control over PACA trust assets as requiring *in rem* jurisdiction, *see, e.g.*, *Classic Harvest LLC v. Freshworks LLC*, No. 15-2988, 2017 WL 5165073, at *2 (N.D. Ga. Nov. 7, 2017) ("The [court's] Order provides for the Court to exercise exclusive *in rem* jurisdiction over [the] PACA Trust Assets."); *S. Katzman Produce Inc. v. Abraham Produce Corp. T/A H Lee A/T/A H Lee Trucking*, No. 22-10108, 2022 WL 17805592, at *9 (S.D.N.Y. Dec. 19, 2022) ("This Court shall exercise exclusive *in rem* jurisdiction over this action. . . ."). But that does not mean that the *Princess Lida* doctrine is automatically applicable here.

Actions proceeding *in personam* to determine rights in the *res* have been recognized as beyond the scope of the rule. 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3161 (3d ed.). And the Supreme Court has noted that the doctrine is inapplicable

when "the plaintiff seeks merely an adjudication of his right of his interest as a basis of a claim against a fund in the possession of a state court." *Princess Lida*, 305 U.S. at 466. Therefore, actions that merely may have some indirect effect on a *res* are not subject to dismissal. For instance, in *Driskill v. Regions Bank*, No. 18-102, 2019 WL 13122497 (E.D. Tenn. Mar. 22, 2019), the court chose to maintain jurisdiction over the plaintiff's breach of contract, wrongful foreclosure, and negligent infliction of emotional distress claims because if successful, the court's "judgment would be binding on the defendant, *not* the property at issue." *Id.* at *2 (emphasis in original). And in *Taglieri v. Monasky*, No. 15-1052, 2015 WL 13794437 (N.D. Ohio Nov. 13, 2015), the court declined the defendant's invitation to dismiss the case based on the pendency of the state litigation because the plaintiff's tort claims were *in personam*. *Id.* at *4.

Here, most of the plaintiffs' claims are *in personam* and can proceed. Two claims are easily dealt with. First, under Michigan law, a breach of contract claim is an *in personam* action. *See City of Southfield v. Shefa, LLC*, 340 Mich. App. 391, 413, 986 N.W.2d 607, 619 (Mich. Ct. App. 2022) (citing *Specialties Distribution Co. v. Whitehead*, 313 Mich. 696, 699-700, 21 N.W.2d 926 (1946)). The plaintiff's breach of contract claim is directed against Lakeside USA and Lakeside Canada. The Court has subject matter jurisdiction over the claim.

Second, the plaintiffs tacitly admit that their "claim" for injunctive relief could be considered *in rem* or *quasi in rem*. *See* Plf.'s Br., ECF No. 42, PageID.1042. They seek to enjoin all defendants from further dissipating trust assets belonging to the plaintiffs and require the turnover of trust funds in the possession of third parties. Compl., ECF No. 1, PageID.8. To the extent that this request seeks an order directed at Lakeside Canada, the entity in bankruptcy, this claim might be subject to dismissal if the *Princess Lida* doctrine applies because of its potential to

interfere with the regular bankruptcy process.  However, the Court has jurisdiction of the claim against other defendants whose assets are not directly subject to the Canadian proceedings.

The remaining claims are perhaps more complicated.  Although, as noted earlier, a court ordinarily determines whether an action is *in rem* or *quasi in rem* by reference to state law, the plaintiffs' PACA claims are creatures of federal law.  However, the Sixth Circuit has explained that ordinary principles of trust law apply to PACA claims.  *Arava USA, Inc. v. Karni Family Farm, LLC*, 474 F. App'x 452, 453 (6th Cir. 2012).

### Counts II, III, and IV

In these counts, the plaintiffs seek the enforcement of their right to payment under the PACA trust because of the Lakeside Companies' alleged failure to pay the plaintiffs the amounts owed.  *See* 7 U.S.C. § 499e(c)(5).  Counts II, III, and IV are pleaded against both Lakeside Canada and Lakeside USA.  The plaintiffs seek an entry of a money judgment against the defendant companies in each of these counts.  The defendants contend that these claims should be characterized as *in rem* or *quasi in rem*, *see Cartwright*, 751 F.3d at 755-56, reasoning that section 499e(c)(5) provides a remedy to enforce "payment from *the trust*." 7 U.S.C. § 499e(c)(5) (emphasis added).  On this view, a *quasi in rem* proceeding would be necessary to secure a remedy because they "resolve only the interests of *particular* persons, generally the parties to the action, in the property." *Hanover American Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 509 (6th Cir. 2022) (emphasis in original).

But this misconceives the nature of the plaintiffs' PACA claims and how the statute works.  Although the complaint could have been clearer on this point, the complaint can be read to allege that the defendants are liable under section 499e(a) ("If any commission merchant, dealer, or broker violates any provision of section 499b of this title he shall be liable to the person or persons

injured thereby for the full amount of damages . . . .") — not just 499e(c)(5).  Count II alleges that

the defendants failed to maintain the PACA trust.  Count III alleges that they failed to make prompt

payment of trust funds.  Count IV alleges that the Lakeside Companies are engaged in unfair

conduct "because they take advantage of PACA's trust protections when selling produce but shirk

their responsibilities under PACA's trust provisions."  Compl. ¶ 56, ECF No.1, PageID.13.

Under section 499e(a), a defaulting commission dealer must answer to a produce seller "for

the full amount of damages . . . sustained in consequence of such violation."  7 U.S.C. § 499e(a).

Section 499b(4) makes it unlawful for sellers to fail to "make full payment promptly," fail to

"maintain the [PACA] trust" and to commit other unfair practices, such as making misleading and

deceptive statements.  This is critical, as section 499e(a) bears more resemblance to an *in personam*

action than section 499e(c)(4) and is an altogether separate method of proving liability.  *See Veg*

*Ex, LLC v. West Central Produce, Inc.*, No. 22-01587, 2023 WL 4291805, at *4 (C.D. Cal. June

6, 2023) (describing section b(4) as "distinct from the provision governing PACA trusts.")  Two

major differences are apparent in the provisions that support this understanding.  First, 499e(a)

creates direct liability against the commission merchant, dealer, or broker, while 499e(c)(5) merely

speaks to actions to enforce "payment from *the trust*." 7 U.S.C. § 499e(c)(5) (emphasis added).

Second, 499e(a) provides the "full amount of damages," rather than what is owed under the trust.

7 U.S.C. § 499e(a).  All of this leads to the conclusion that section 499e(a)'s cause of action is

characteristic of an *in personam* action because it creates liability against a defendant rather than

property.  Therefore, Counts II, III, and IV are not barred by the *Princess Lida* doctrine, even if it

applies here.  *Cartwright*, 751 F.3d at 760.

**Counts VI, VII, and VIII**

The claims in these counts seek personal liability against defendants Cervini, Antonios, and Lakeside Canada for unlawfully dissipating trust assets. The Sixth Circuit has recognized that "individual shareholders, officers, or directors of a corporation who are in a position to control statutory trust assets, and who fail to preserve those assets, may be held personally liable under the Act." *Arava*, 474 F. App'x at 453 (citing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)); *see also Six L's Packing Co.*, 524 F. App'x at 156  (noting that "our sister circuits unanimously agree PACA imposes individual liability on corporate officers, shareholders, and others, to the extent that they control the trust assets") (collecting cases). These claims plainly plead *in personam* causes of action. The defendants maintain that this is impermissible under the *Princess Lida* doctrine because finding liability would require ascertaining that the PACA trust failed to pay the plaintiffs. But this argument is an overreach; the court's judgment would bind the individual defendants, not the property or the statutory trust. *See Driskill*, 2019 WL 13122497 at *2. And the defendants cite no case for the proposition that a court needs *in rem* or *quasi in rem* jurisdiction over a trust to make a factual finding that a party has failed to pay sums owed that also are impressed with a trust.

**Counts IX, and X**

Counts IX and X allege that Lakeside USA and Lakeside Canada unlawfully retained trust assets. Both counts seek disgorgement of those assets. Compl. ¶ 105, 113. Disgorgement is "[t]he act of giving up something (such as profits illegally obtained) on demand or by legal compulsion." *Disgorgement*, *Black's Law Dictionary* (11th ed. 2019). It is fair to construe these claims as akin to an action under section 499e(c)(5) to enforce payment from the trust. Although "actions involving trusts may have characteristics of both in rem and *in personam* proceedings . . ., [a]n

action in rem, in the strict sense, is directed against the property itself or to enforce a right in property." *In re Est. of Westman*, 2012 WL 4210413, at *17 (Mich. Ct. App. Sept. 20, 2012) (internal citations omitted). Therefore, these claims are properly characterized as *in rem*. If the *Princess Lida* doctrine applies here, the Court would not have jurisdiction over the claims in these counts against Lakeside Canada, since the trust overlaps with the Canadian bankruptcy estate.

The plaintiffs attempt to avoid this conclusion by arguing that the Canadian bankruptcy code explicitly exempts from the bankruptcy estate "property held by the bankrupt in trust for any other person." Bankruptcy and Insolvency Act § 67(1)(a). Yet a court evaluating the equivalent U.S. provision has noted that only "the equitable interest of the PACA trust beneficiary in the trust *res* is not included in the bankruptcy estate." *See In re Cherry Growers, Inc.*, 576 B.R. 569, 573, 577 (Bankr. W.D. Mich. 2017) (discussing section 541 of the bankruptcy code). The legal interest in the trust assets remains property of the estate. *Ibid.* Therefore, some control over the trust *res* would be necessary to afford the plaintiffs' relief. Count IX is subject to dismissal if the doctrine applies here.

*  *  *  *  *

That leaves the second question, that is, whether the *Princess Lida* doctrine applies to foreign courts. The answer to that question is far from certain. The Sixth Circuit has not addressed the issue. The Second and Third Circuits have held that the doctrine divests a federal court of jurisdiction when a foreign court has prior jurisdiction over a *res*. *See Chesley*, 927 F.2d at 66-67 (recharacterizing the *Princess Lida* holding as applicable to foreign courts); *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 175-76 (3d Cir. 1993) (assuming doctrine applies when a competing action is filed first in a foreign court). But the policy justifying the *Princess Lida* doctrine — harmonious relationships between federal and state courts, *see Cartwright*, 751 F.3d at 762 — has less

applicability where the competing action is in a foreign court.  Moreover, the doctrine, which has its foundation in federalism, is couched in jurisdictional terms, which means that the pronouncement of one court divests the second court of the power to proceed at all.  *See State Eng'r v. S. Fork Band of Te–Moak Tribe of W. Shoshone Indians,* 339 F.3d 804, 810 (9th Cir. 2003) (explaining that the prior exclusive jurisdiction doctrine "is no mere discretionary abstention rule.  Rather, it is a mandatory jurisdictional limitation.").  When the two competing courts are American courts, the doctrine is bilateral and the jurisdiction of the second court, be it state or federal, is ousted.  *Chapman*, 651 F.3d at 1043-44.  It is not logical, however, that such a judge-made doctrine would empower a foreign tribunal to upset the authority of a court of the United States.

That is not to say that when two judicial fora are called upon to adjudicate the distribution of a single *res*, the policy interest is any less valid when one of them is a foreign tribunal.  But that policy interest is protected by the doctrine of international comity, which is not jurisdictional.  *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d Cir. 2000) ("When a court dismisses a complaint in favor of a foreign forum pursuant to the doctrine of international comity, it declines to exercise jurisdiction it admittedly has."); *cf. Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007) ("[W]hen an action already rests on federal question jurisdiction, the theory of comity can serve as a discretionary basis for a court to determine whether a foreign country court's judgment should be given preclusive effect.").

Moreover, applying the *Princess Lida* doctrine because of a foreign proceeding might undermine the plaintiffs' rights under PACA.  Some jurists have taken issue with the application of *Princess Lida* in a way that would essentially abolish a party's federal statutory rights.  *See Dailey*, 987 F.2d at 179 (Alito, J., dissenting) ("The majority in this case has applied the *Princess*

*Lida* doctrine in an entirely different context and in doing so has abrogated federal statutory rights. Neither the majority nor the appellants have cited any precedent supporting such a result."). In *Dailey*, then-Judge Alito agreed with the district court's decision to retain jurisdiction of the plaintiffs' ERISA claims but monitor and address any conflicts with the Canadian litigation as they arose. *Id.* at 179-80. That approach is preferred and would protect the plaintiffs' rights in assets impressed with a statutory trust under PACA.

For these reasons, the Court believes that the *Princess Lida* doctrine does not apply to oust subject matter jurisdiction when the competing court is a foreign tribunal. The Court, therefore, will deny the defendants' motion to dismiss for want of subject matter jurisdiction.

B.

The defendants also argue that the plaintiffs cannot proceed with this case because of an automatic stay that arose when Lakeside Canada filed its Canadian bankruptcy case. They contend that there is a long history of U.S. courts enforcing stays in Canadian bankruptcy courts and that the Court should abstain since the claims against it are governed by the stay and that Canada is a proper alternative forum. Lakeside USA frames the claims against it as proxies for claims against the debtor, Lakeside Canada, which it argues are foreclosed under Sixth Circuit precedent by the automatic stay.

The plaintiffs counter that, although Chapter 15 of the United States Bankruptcy Code provides a procedure by which a foreign debtor can petition for a non-U.S. bankruptcy proceeding to be recognized within the United States, Lakeside USA has not filed a petition, and it is not a "foreign representative" of the bankruptcy debtor authorized to file such a petition.

The plaintiffs have the better argument. Under Section 1515 of the bankruptcy code, a foreign representative may seek U.S. recognition of its foreign bankruptcy proceeding. 11 U.S.C.

§ 1515.  A foreign representative is a "person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).   If a court recognizes a foreign bankruptcy proceeding, the automatic stay established by 11 U.S.C. § 362(a)(1) applies "with respect to the debtor."  11 U.S.C. § 1520(a)(1).  But section 1515 lays out specific requirements for this petition, including that it be accompanied by evidence of the existence of the proceeding and the appointment of the foreign representative, § 1515(b), and a statement "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative," § 1515(c).

There has been no registry of a foreign bankruptcy here.  Lakeside USA argues that strict adherence to the procedures in Chapter 15 is not warranted, and some courts agree.  *See Moyal v. Münsterland Grupper GmbH & Co. KG*, 539 F. Supp. 3d 305, 309 n.1 (S.D.N.Y. 2021).  The defendants also cite *Collier on Bankruptcy* for the proposition that "courts regularly rule that chapter 15 recognition is not a prerequisite to grant comity to foreign proceedings on the request of a party other than a foreign representative."  8 *Collier on Bankruptcy* ¶ 1509.02 (2023).  But other cases hold that Chapter 15 recognition remains a prerequisite.  *See, e.g.*, *Webb Mason, Inc. v. Video Plus Print Solutions, Inc.*, , 2018 WL 7892976, at *2 (D. Md. Dec. 7, 2018) ("[The defendant] has not filed for recognition in compliance with Chapter 15. Accordingly, I decline to stay this case."); *United States v. J.A. Jones Const. Grp.*, LLC, 333 B.R. 637, 639 (E.D.N.Y. 2005) ("In the absence of recognition under chapter 15, this Court has no authority to consider [the] request for a stay.").

Lakeside USA has not established that it is a "foreign representative."  Nor has it followed the clear notification process Congress set out in 11 U.S.C. § 1515.  Thus, there is no stay that

automatically halts proceedings in this Court, and Lakeside USA's contention that it is entitled to damages for violation of the stay has no merit. Where Congress has enacted a clear protocol for foreign bankrupt defendants, the Court will not ignore a party's choice not to follow that procedure, especially where the party seeking the benefits of the automatic stay is not the bankrupt party.

Even if a representative did properly seek recognition of the Canadian bankruptcy, the stay would not necessarily bind the Court. That is because Lakeside Canada is the party in bankruptcy, but the claims in this case remain against defendants Lakeside USA, Cervini, and Antonios, none of whom have suggested that they are in bankruptcy. Lakeside USA argues that if the plaintiffs prevail on their *alter ego* theory of liability, Lakeside USA's own assets may be subject to the Canadian bankruptcy. And when assets of a bankrupt estate are within the jurisdiction of the United States, a foreign representative may request that a bankruptcy court stay execution against the debtor's assets. 11 U.S.C. § 1519. But a court exercising its authority to do so may only grant relief "if the interests of the creditors . . . are sufficiently protected." *See* 11 U.S.C. § 1522. Whether the creditors' interests are sufficiently protected is a question far removed from the present inquiry. Perhaps more significantly, some of the plaintiffs' claims against Lakeside USA arise out of its own alleged PACA trust responsibilities. That is a direct, rather than derivative, theory of liability; a bankruptcy stay would have no effect on those claims. Because there is no registered foreign bankruptcy, there is no automatic stay in effect in the United States that binds this Court or the plaintiffs.

### C.

Related to their automatic stay argument is the defendants' contention that the Court should abstain from proceeding in this case because of considerations of international comity. "Comity 'is the recognition which one nation allows within its territory to the legislative, executive or

judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *Taveras*, 477 F.3d at 783 (citing *Hilton v. Guyot,* 159 U.S. 113, 164 (1895)).  "[It] is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Ibid.*  At its core is the idea that "federal courts should pause before acting contrary to the legislative, executive, or judicial acts of another nation."  *RSM Richter, Inc. v. Behr American, Inc.*, 729 F.3d 553, 558 (6th Cir. 2013) (citing *Chavez v. Carranza*, 559 F.3d 486, 495 (6th Cir. 2009)).

Abstention based on comity is an exception and runs headlong into the general rule that a federal court has a "virtually unflagging obligation" to exercise the jurisdiction Congress has bestowed upon it.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).  This obligation may be avoided only in "extraordinary and narrow" circumstances. *Ibid.*  One of those circumstances arises when parallel proceedings are pending in another court, including a foreign court.  *See, e.g.*, *Royal and Sun All. Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006); *see also Answers in Genesis of Kentucky, Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009).

Foreign bankruptcy proceedings are one area where federal courts afford deference to foreign proceedings.  *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987); *Badalament v. Inc. v. Mel-O-Ripe Banana Brands, Ltd.*, 265 B.R. 732, 736 (E.D. Mich. 2001).  "[F]ederal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors."  *Victrix*, 825 F.2d at 714.

Remember that "[c]omity is an affirmative defense" for which the movant holds the burden of proof.  *Taveras*, 477 F.3d at 783 (citing *Int'l Transactions, Ltd. v. Embotelladora Agral*

*Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003)).  In *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico*, 44 F.3d 187, 191 (3d Cir. 1994), the Third Circuit set forth a test employed by courts in this district under which a party seeking a stay based on an active foreign bankruptcy proceeding must show that "(1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay." *Washington v. Expo Company GmbH & Co. Kg.*, No. 03-72581, 2007 WL 2741988, at *6 (E.D. Mich. Sept. 18, 2007) (quoting *Philadelphia Gear*, 44 F.3d at 193).  Foreign bankruptcy law does not need to be identical to that of the United States in order for comity to be justified, *ibid.*, but abstention should be declined "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect," *Philadelphia Gear*, 44 F.3d at 191.  "It is also well established . . . that orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60-61 (2d Cir. 2004) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 208-09 (1958)).

Courts have taken different approaches to determining whether international comity applies.  Some evaluate international comity using the eight-factor *Colorado River* criteria.  *See, e.g.*, *Multi Holsters, LLC v. Tac Pro, Inc.*, No. 17-10438, 2017 WL 4098857, *3 (E.D. Mich. Sept. 15, 2017); *Grammar, Inc. v. Custom Foam Systems, Ltd.*, 482 F. Supp. 2d 853, 856-57 (E.D. Mich. 2007).  However, other courts treat foreign bankruptcy proceedings as a distinct category for abstention purposes — an exception to the *Colorado River* test.  *Badalament*, 265 B.R. at 736; *see also Moyal*, 539 F. Supp. 3d at 308 ("Foreign bankruptcy proceedings, however, generally are an exception to [*Colorado River*].")

In *Badalament*, the plaintiff sued a Canadian produce buyer and its president for breach of contract. *Badalament*, 265 B.R. at 733-34. The buyer subsequently filed for bankruptcy protection in Canada, *id.* at 734, and the defendants sought to stay the U.S. proceedings pending a restructuring process in Canada that would discharge the debt and moot the case, *id.* at 736. The court invoked its "inherent power to stay the proceedings before it" and cited the line of cases dealing with granting comity to foreign bankruptcy proceedings mentioned above, ultimately determining the case should be stayed or dismissed until the resolution of the Canadian action. *Id.* at 739. This approach has been followed by other courts in this circuit. *See Zobel v. Contech Enters.*, No. 14-2721, 2016 WL 1237384, *3 (S.D. Ohio Mar. 25, 2016); *Banyan Licensing, Inc. v. Orthsupport Intern., Inc.*, No. 00-7038, 2002 WL 31059365, at * 2 (N.D. Ohio Aug. 15, 2002).

Nonetheless, under either approach, the result will be the same in this case: abstention is not appropriate here.

First, *Colorado River* abstention is only appropriate when the proceedings are "parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). This does not mean the proceedings must be identical — substantial similarity is sufficient. *Ibid.* Two actions are "less likely to be parallel when the parties seek different relief, even when they arise out of the same basic facts." *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *3 (6th Cir. Aug. 2, 2022) (internal quotation marks omitted). But the causes of action and parties need not be identical for the proceedings to be parallel. *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394 (6th Cir. 2019).

Here, the plaintiffs' claims are not parallel to the claims in the Canadian bankruptcy case. It is not evident that the plaintiffs are a party to any proceeding in Canada. Counsel for the defendants has represented that the plaintiffs had filed a motion in the Canadian bankruptcy court

requesting their PACA claims be adjudicated in the Eastern District of Michigan, *see* ECF No. 46, PageID.1325-26, but that seems to be the extent of their appearance in the Canadian court. And Lakeside Canada — the entity in bankruptcy — has not yet appeared in this action. Although there may be *theoretical* overlap between the parties and their claims between the proceedings, there is no *actual* overlap here. *Upward Mobility*, 784 F. App'x at 394. Thus, the U.S. and Canadian proceedings are not parallel. This conclusion is buttressed by the fact that the plaintiffs assert other claims in this proceeding, including direct liability claims and claims against third parties that would likely be impossible to bring in a bankruptcy proceeding. *See TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005) (noting that when a state court action would not dispose of all claims in a federal case, the two actions were not parallel). As the actions are not parallel, the rest of the factors a court must evaluate for *Colorado River* abstention do not warrant much discussion.

Even if the proceedings were parallel, however, several *Colorado River* factors militate against abstention. *Romine*, 160 F.3d at 340-41. First, the federal forum is sufficiently convenient for the parties. *Ibid.* Here, Lakeside USA is based in Michigan and relevant evidence is likely to be here or nearby. Lakeside Canada has not appeared in this action, but is allegedly based nearby in Leamington, Ontario. Second, the source of the relevant law is an important factor to consider under *Colorado River*, and in this case, it weighs against abstention because federal law applies to most of the plaintiffs' claims. *Ibid.* Finally, it is not clear that the foreign court would be adequate to "protect the federal plaintiff's rights." *Ibid.* The Canadian court is likely an inadequate venue to litigate the plaintiffs' PACA claims against the defendants. Therefore, the *Colorado River* provides no grounds for abstention.

- 21 -

The analysis under the bankruptcy exception to *Colorado River*, applied in cases like *Badalament*, leads to a similar result. Canada's bankruptcy process closely resembles the equitable distribution of assets available under the U.S. bankruptcy code, *see Badalament*, 265 B.R. at 737, but comity to a foreign bankruptcy court should be withheld "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect," *Philadelphia Gear*, 44 F.3d at 191. The plaintiffs assert that adjudicating their PACA claims as part of a foreign bankruptcy would be contrary to PACA's remedial purpose.

The plaintiffs are correct that PACA is a unique statutory scheme. Under the law, when a seller ships produce to a buyer, a statutory trust over certain assets of the buyer is created upon acceptance of the commodities. *Six L's Packing Co.*, 524 F. App'x at 152. "The trust effectively protects commodity sellers and suppliers against harm from financing arrangements entered into by buyers (merchants, dealers, and brokers) who give 'security interest[s] in [their] commodities or the receivables or proceeds from the sale of the commodities.'" *In re Spiech Farms, LLC*, 840 F. App'x 861, 866 (6th Cir. 2021) (quoting *Overton Distribs., Inc. v. Heritage Bank*, 340 F.3d 361, 364 (6th Cir. 2003). Unless the statute specifies otherwise, general trust law principles govern PACA claims. *Six L's Packing Co.*, 524 F. App'x at 156. And as a trust, PACA assets are excluded from a debtor-trustee's bankruptcy estate. *Sanzone-Palmisano*, 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996). This is consistent with interpretations of the U.S. bankruptcy code. *See In re Milton Poulos, Inc.*, 94 B.R. 648, 653 (Bankr. C.D. Cal. 1988) (listing cases). Thus, a seller or supplier's rights "are superior to those of the buyers' other creditors." *Speich*, 840 F. App'x at 866.

PACA also creates individual liability for "shareholders, officers, or directors of a corporation who are in a position to control statutory trust assets, and who fail to preserve those

assets." *Six L's Packing Co.*, 524 F. App'x at 156 (citing *Arava*, 474 F. App'x at 453).  In short, PACA is a powerful remedy for produce sellers, which is exactly what Congress intended even if the results may seem "harsh."  *Sanzone-Palmisano*, 986 F.2d at 1013.

The defendants have furnished one example of a Canadian court applying PACA: *Fresh Network v. Allesandro*, 2004 CanLII 30078 (ON SC), https://canlii.ca/t/1htph.  This is certainly helpful to their cause.  And contrary to the plaintiffs' assertions, there is little evidence that the defendants have engaged in the type of foul play that justified disregarding comity in past cases. *Compare, e.g., Washington*, No. 03-72581, 2007 WL 2741988, at *7.  There, a defendant company failed to appear at a final pretrial conference, leaving the court to conclude the defendant was exercising "deliberate disregard for the [c]ourt's orders." *Ibid.*  The plaintiffs point to the timing Lakeside Canada's bankruptcy filing, but that is not sufficient because that filing could not have possibly created "legal impediments to the enforcement of a federal court's orders," *Uzan*, 388 F.3d at 60, as it occurred prior to the commencement of the present action.  Compl. ¶ 22.

Still, our Canadian neighbors' good-natured ability to apply American law only goes so far for the defendants.  As has been mentioned repeatedly, the plaintiffs have pleaded multiple claims against defendants who are not subject to the Canadian bankruptcy and that are not based purely on an *alter ego* relationship with Lakeside Canada.  There is no Canadian proceeding that would support applying comity to stay the case as to these defendants, and the Court may retain jurisdiction over them independent of the Canadian proceeding. *See Banyan Licensing*, No. 00-7038, 2002 WL 31059365, at *2-3 (retaining jurisdiction over claims against U.S. defendant while staying proceedings against foreign defendant in bankruptcy); *see also Zobel*, No. 14-2721, 2016 WL 1237384, *3 (same).  Moreover, Lakeside Canada also has not appeared in this action, much less requested a stay due to the pendency of its bankruptcy.  Absent a request, the Court need not

stay proceedings against Lakeside Canada or any of the other defendants based on international comity.

D.

Finally, the defendants argue that the case cannot proceed because the plaintiffs have not (and presumably cannot) joined as a party the Bank of Montreal, one of the listed creditors in Lakeside Canada's bankruptcy case. The defendants identify the Bank of Montreal and other putative PACA trust beneficiaries as indispensable parties. As for the bank, they argue that if successful, the plaintiffs' PACA claims would take priority over the bank's secured interest in Lakeside Canada's remaining assets. They argue that the Court cannot protect the bank's interests because the remedy sought by the plaintiffs is directly at odds with the bank's position in the Canadian bankruptcy. As to the putative PACA trust beneficiaries, the defendants maintain that trust principles create a fiduciary relationship among co-beneficiaries, and that case law holds that all beneficiaries are required parties for the adjudication of trust matters. They contend that the Court cannot engage in a claims procedure to identify other trust beneficiaries because such action would require *in rem* jurisdiction over the PACA trust.

Under Federal Rule of Civil Procedure 12(b)(7), a case may be dismissed for failure to join an indispensable party. The joinder rules compel plaintiffs to sue all persons who are necessary and indispensable to the adjudication of the case. *Loc. 670 v. Int. Union, United Rubber, Cork, Linoleum and Plastic Workers of America*, 822 F.2d 613, 618 (6th Cir. 1987). But if an indispensable party cannot be added to the case because the court has no personal jurisdiction over the person, or joinder would upset subject-matter jurisdiction, joinder might be excused in some circumstances. *Ibid.* The Sixth Circuit employs a three-step analytical framework to engage a "pragmatic approach" to the question, as "an entire suit should not be dismissed if meaningful

- 24 -

relief can still be accorded [even in the party's absence]." *Ibid.* (quoting *Smith v. United Brotherhood of Carpenters and Joiners of America*, 685 F.2d 164, 166 (6th Cir. 1982)); *see also Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 116 n.12 (1968).

When determining whether an absent person is indispensable, courts generally look first to Rule 19(a)'s definitional language. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (noting that the first step in the process requires the court to "determine whether the person or entity is a necessary party under Rule 19(a)"). Indispensability means that in the "person's absence complete relief cannot be accorded among existing parties," or, as relevant here, the "person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(A), (B)(i). Second, if the person or entity is a necessary party, the Court must decide if joinder of that person or entity will deprive the Court of subject matter jurisdiction. *Glancy*, 373 F.3d at 666 (citing *W. Maryland Ry. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 961 (D.C. Cir. 1990)). And third, if joinder is not feasible because it will eliminate the Court's ability to hear the case, the Court must "analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Ibid.* (quoting *W. Maryland Ry. Co.*, 910 F.2d at 961).

Dismissal under Rule 12(b)(7) is not appropriate here. Although the parties identified by the defendants likely are "indispensable," the Court may proceed in their absence by providing adequate safeguards.

The Bank of Montreal and other potential PACA claimants are likely indispensable parties under Rule 19(a) because they could share an interest in one of the subjects of the litigation — the entity defendants' assets impressed with the statutory trust — and may not be able to protect that

interest absent participation in the litigation.  For the Bank of Montreal, this is true because PACA claimants have priority over the claims of secured creditors.  *In re Arctic Exp., Inc.*, 636 F.3d 781, 798 (6th Cir. 2011) ("PACA trusts were created by Congress to correct the perceived inequity to unsecured produce sellers caused by financing arrangements between produce purchasers and their lenders, by giving the sellers precedence over the claims of secured creditors.").  Because the bank may have a security interest in all assets remaining in Lakeside Canada's bankruptcy estate, *see* Ex. 24-1, ECF No. 24, PageID.560, it is clear the bank would have an interest in the merits of the plaintiffs' claims against Lakeside Canada.  Likewise, other putative PACA claimants share an interest in the subject matter of the litigation as PACA assets are to be distributed on a *pro rata* basis in the event trust assets are insufficient to cover claims.  *Farm-Wey Produce, Inc. v. Wayne L. Bowman Co., Inc.*, 973 F. Supp. 778, 781 (E.D. Tenn. 1997).

However, dismissal is unnecessary because Court may shape any potential relief to avoid prejudice to absent parties.  *See* Fed. R. Civ. P. 19(b)(2) (affording district courts discretion to proceed even in the absence of a necessary party after considering "the extent to which prejudice [to the absent party] could be lessened or avoided").  For instance, the Court could determine the issue of liability of some or all defendants without ordering specific relief as to assets under the control of the Canadian bankruptcy court.  And if Lakeside Canada faces liability, the Court could protect the putative PACA claimants by establishing a claims process.  *See, e.g.*, *Veg Ex, LLC*, No. 22-01587, 2023 WL 4291805, at *4 n.6 (discussing claims procedure established in prior litigation).

The defendants' motion to dismiss under Rule 12(b)(7) will be denied.

III.

Defendants Christopher Cervini and Bakhos Antonios move to dismiss the case against them under Federal Rule of Civil Procedure 12(b)(6), contending that the complaint does not state a viable claim against either of them.

Under Rule 12(b)(6), the Court must determine if "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  When reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

Defendant Cervini argues that all counts of the complaint should be dismissed because the plaintiffs failed to plead that they preserved their interest in the PACA trust by supplying a notice of their intent to preserve their rights to the entity with which they contracted.  He also contends that the plaintiffs cannot maintain an action for dissipation of assets because sufficient liquid assets exist as part of the Canadian bankruptcy estate to satisfy the plaintiffs' trust claims.  He further asserts that the *alter ego* count (which is not pleaded against him) is improper because the plaintiffs have not demonstrated wrongful conduct beyond a failure to maintain trust assets, which is not sufficient to warrant a finding of *alter ego*.  Finally, he contends that the plaintiffs' failure to assert their claims in the Canadian bankruptcy proceeding means the plaintiffs cannot show proximate

cause, they failed to mitigate damages, and the action is barred by *res judicata*, waiver, and forfeiture.

In his own 12(b)(6) motion, defendant Antonios incorporates all of Cervini's arguments and further asserts that the complaint is "irrevocably and irreparably contradictory," is intentionally vague about which defendants engaged in what behavior, improperly incorporates all counts into each subsequent count, and fails to plead its PACA causes of action with sufficient specificity.

To state a PACA claim, a plaintiff must plead that:

(1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

*La Grasso Bros. Inc. v. Am. Foodservice, L.L.C.*, No. 10-10711, 2011 WL 891221, at *4 (E.D. Mich. Mar. 11, 2011) (Battani, J.). A seller may provide notice of their PACA claim by including it in writing on their invoices. 7 U.S.C. § 499e(c)(4); *Overton Distribs.,*, 340 F.3d at 365.

The plaintiffs have pleaded sufficient facts to defeat the defendants' motion to dismiss under Rule 12(b)(6).

### A.

The parties do not seriously dispute that the commodities sold were perishable agricultural commodities. A "perishable agricultural commodity" includes "[f]resh fruits and fresh vegetables of every kind and character." § 499a(b)(4)(A). The plaintiffs' complaint alleges that they sold wholesale quantities of produce to the defendants. Compl. ¶ 12. And the invoices attached to the complaint indicate that the transactions involved tomatoes, peppers, and cucumbers. *Id.* at PageID.28-42. The plaintiffs have satisfied their burden on this element.

The plaintiffs have sufficiently pleaded Lakeside Canada and Lakeside USA are purchasers of the produce who are commission merchants, dealers, or brokers.  The plaintiffs allege that both Lakeside entities qualify as dealers because they share a PACA license number.  *Id.* ¶ 8.  PACA defines the term "dealer" to include those who secure a PACA license under section 499c.  *See* § 499a(6).  Taking the plaintiffs' facts as true, the allegations about the defendants' shared PACA license number make it sufficiently plausible that one or both Lakeside defendants was a purchaser who was also a dealer under the statute.  Although the defendants take issue with the plaintiffs' claims against the "Lakeside Companies" — an entity they say does not exist — even a passing review of the complaint makes clear that plaintiffs use the tern as a moniker to refer to Lakeside USA and Lakeside Canada together.  *See* Compl., ECF No.1, PageID.1 ("Lakeside USA and Lakeside Canada are, together, "Lakeside Companies.").  It may be that either Lakeside USA or Lakeside Canada bear no liability to the plaintiffs because it never transacted with them, but at the motion to dismiss stage, plaintiffs are permitted to plead in the alternative.  Fed. R. Civ. P. 8(d)(2).

The parties do not seriously dispute that the transactions at issue occurred in foreign or interstate commerce, and the complaint includes numerous allegations suggesting this requirement is satisfied.  *See, e.g.*, Compl. ¶ 12; *see also id.* at PageID.28-48 (listing produce sales with delivery destinations in multiple states and Canada).  This element is plausibly pleaded.

The plaintiffs allege that they have not received full payment from their transactions with the defendants and are owed approximately $1.3 million.  Compl. ¶ 17.  The plaintiffs have pleaded this element with sufficient particularity.

PACA also requires that the plaintiffs must have put the buyers on notice of their PACA trust rights by reciting language required under 7 U.S.C. § 499e(c)(4) in each of its invoices.  *Six L's Packing Co.*, 524 F. App'x at 152.  The plaintiffs allege that they complied with this

requirement, Compl. ¶ 16, and a review of the invoices attached to the complaint demonstrates that the requisite language is present, *id.* at PageID.28-42.   The defendants argue the plaintiffs' pleadings are deficient because they fail to include every invoice and do not allege to whom each invoice was sent or with whom the plaintiffs originally contracted for the sale of produce. However, the plaintiffs allege that all of its invoices included the required language.  Compl. ¶ 16. The defendants cite no case for the proposition that a plaintiff must furnish every invoice at the pleading stage.  And it is simply not the case that the plaintiffs do not adequately allege the identity of the recipients of the invoices.   On a motion under Rule 12(b)(6), the Court may consider documents attached to the pleadings.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).  Here, the plaintiffs' invoices each note that produce was sold to "Lakeside Produce, Inc." and each includes a date of sale.  Compl., ECF No. 1, PageID.28-42.  As stated above, the plaintiffs may proceed on alternate theories. Lakeside USA, or Lakeside Canada, or both could plausibly be liable to the plaintiffs based on the allegations in the complaint.

The plaintiffs have pleaded sufficient facts to state a claim under PACA against the defendants.

### B.

The plaintiffs have also pleaded sufficient facts to state individual claims against defendants Cervini and Antonios.   As explained above, PACA creates personal liability for "individual shareholders, officers, or directors of a corporation who are in a position to control statutory trust assets, and who fail to preserve those assets."  *Six L's Packing Co.*, 524 F. App'x at 156 (quoting *Arava*, 474 F. App'x at 453).  The plaintiffs allege that Cervini is "an officer, director, and/or shareholder of the Lakeside Companies."  Compl. ¶ 9.  They further allege that he is listed

on the Lakeside Companies' PACA license as a principal and was in a position of control over the trust assets. *Ibid.* Similarly, the plaintiffs allege that Antonios was the Lakeside Companies' director of operations and in a position of control over the PACA trust assets. *Id.* at ¶ 10.

The defendants argue that the plaintiffs failed "to identify which section of PACA obligates" them to do anything. But under the law of this circuit, individual liability derives from common law breach of trust principles rather than the statutory language. *Six L's Packing Co.*, 524 F. App'x at 156 (quoting *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005)). A trustee bears fiduciary obligations for assets maintained for a beneficiary. *See* Restatement 3d of Trusts § 76(1) ("The trustee has a duty to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law."). The defendants' implied argument is that a trustee does not violate his fiduciary duties by permitting a trust under his control to become insolvent is unsupportable.

The defendants also respond that there has been no dissipation of trust assets because sufficient funds remain available in the Canadian bankruptcy to satisfy the plaintiffs' claims. But the plaintiffs have alleged that the defendants' failure to pay suggests there has been a dissipation in trust assets, Compl. ¶ 24, and "dissipation" is broadly construed. *See* 7 C.F.R. § 46.46(a)(2) (defining dissipation as any act or failure to act "which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed."). Under the Department of Agriculture's definition, a bankruptcy filing — along with its concomitant, complex claims procedures — undoubtedly qualifies as dissipation. It is also doubtful that there are sufficient assets in the Canadian bankruptcy estate. The defendants' argument would create a rule requiring PACA plaintiffs to plead particular facts about a defendant's finances, which is counter to PACA's strong remedial purpose. *See Sanzone-Palmisano*, 986 F.2d at 1013. Even so, the defendants'

Exhibit 24-1 lists the plaintiffs among unsecured creditors, whose claims total more than $18 million. Ex. 24-1, ECF No.24-1, PageID.544, 547. Other unsecured creditors also may have PACA claims. In the event that PACA trust funds are insufficient to pay each seller, trust assets are shared among claimants *pro rata*. *Farm-Way Produce, Inc.*, 973 F. Supp. at 781. At this stage in the proceedings, the plaintiffs have sufficiently pleaded a dissipation in trust assets.

The complaint sufficiently alleges that Cervini and Antonios are subject to individual liability for failing to maintain the PACA trust.

C.

The complaint also contains sufficient facts to allege that defendants Lakeside USA and Lakeside Canada are *alter egos* of one another. Nonetheless, the defendants maintain that finding an *alter ego* relationship would be improper because the plaintiffs have not demonstrated that they were injured, and they have not pleaded reliance on the defendants' *alter ego* fraud. However, the pleading also contains sufficient factual matter to establish liability on an alter ego theory. The parties disagree whether Michigan or Canadian law applies, but the Court need not settle that legal question because both standards lead to the same result: the pleadings are sufficient to establish liability on an *alter ego* theory.

Under Michigan law, separate business structures are not "fictions"; instead, there is a presumption that the corporate form will be respected. *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547-48, 537 N.W.2d 221, 224 (1995) (citing *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 243, 26 N.W.2d 757, 761 (1947)). "This presumption, often referred to as a 'corporate veil,' may be pierced only when an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some overriding public policy.'" *Ibid.* (alteration in original) (quoting *Wells v. Firestone*, 421 Mich. 641, 650, 364 N.W.2d 670, 674 (1984)); *see also Paul v.*

*Univ. Motor Sales Co*., 283 Mich. 587, 602, 278 N.W. 714, 720 (1938) ("[W]hen the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.").

A plaintiff seeking to penetrate a corporate structure and access individual shareholders' assets must plead facts that show that (1) the corporate entity is a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss. *Nogueras v. Maisel & Assocs. of Mich*., 142 Mich. App. 71, 86, 369 N.W.2d 492, 498 (1985); *Lyngaas v. Ag*, 992 F.3d 412, 420 (6th Cir. 2021). Elaborating on these elements, the Michigan court of appeals explained that a trial court first must "determine whether the evidence establishes that the owner operated the entity as his or her alter ego — that is, as a sham or mere agent or instrumentality of his or her will." *Green v. Ziegelman*, 310 Mich. App. 436, 458, 873 N.W.2d 794, 807 (2015). It "then must determine whether the manner of use effected a fraud or wrong on the complainant." *Ibid*. (citing *Gledhill v. Fisher & Co*., 272 Mich. 353, 358, 262 N.W. 371, 372 (1935)). "In considering this element, it is not necessary to prove that the owner caused the entity to directly harm the complainant; it is sufficient that the owner exercised his or her control over the entity in such a manner as to wrong the complainant." *Ibid*. "But it bears repeating that establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence." *Id*. at 459, 873 N.W.2d at 807 (citing *Gledhill*, 272 Mich. at 359-61, 262 N.W. at 373). "Finally, the trial court must determine whether the wrong would cause the complainant to suffer an unjust loss." *Ibid.* (citing *Gledhill*, 272 Mich. at 359, 262 N.W. at 373). To show that one entity is the "mere instrumentality" of another entity, courts look to these factors:

> (1) whether the corporation is undercapitalized, (2) whether separate books are
> kept, (3) whether there are separate finances for the corporation, (4) whether the

corporation is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the corporation is a sham.

*Glenn v. TPI Petroleum, Inc*., 305 Mich. App. 698, 716, 854 N.W.2d 509, 520 (2014).  However, "[t]he existence of one of these factors, alone, is not necessarily dispositive, nor are the listed factors exhaustive."  *In re Flint Water Cases*, 584 F. Supp. 3d 383, 401 (E.D. Mich. 2022) (Levy, J.) (citing *Lyngaas*, 992 F.3d at 421).  Rather, the Court "examine[s] the totality of the evidence surrounding the owner's use of an artificial entity and, in particular, the manner in which the entity was employed in the matter at issue."  *Ibid.* (quoting *Green*, 310 Mich. App. at 458, 873 N.W.2d at 807).

A similar standard prevails in Canada, although the test appears less settled.  A court may pierce the corporate veil where "[the corporation] is completely dominated, controlled, and being used as a shield for fraudulent or improper conduct."  *Transamerica Life Ins. Co of Canada v Canada Life Assurance Co.* (1996), 28 O.R. 3d 423, 433-34, (Can. Ont. Gen Div. Ct).  "Generally, a subsidiary, even a wholly owned subsidiary, will not be found to be the alter ego of its parent unless the subsidiary is under the complete control of the parent and is nothing more than a conduit used by the parent to avoid liability."  *Ibid.* (*citing Gregorio v. Intrans-Corp.* (1994), 18 O.R. 3d 527, 536 (Can. On. C.A)).

Here, the complaint pleads sufficient facts to support an inference that Lakeside Canada and Lakeside USA are *alter egos* of each other.  The complaint alleges specifically that Lakeside Canada owns Lakeside USA and that the two entities are both led by Cervini and Antonios. Compl. ¶ 8-10.  It further alleges that the entities shared a single PACA license number.  *Id.* at ¶ 8.  The plaintiffs also state that Lakeside USA uses the same Leamington, Ontario mailing address as Lakeside Canada.  *Id.* at ¶ 52.  The entities are also alleged to have comingled funds and feature integrated operations.  *Id.* at ¶ 73-74.  Taken as true, these factors are sufficient at the pleading

- 34 -

stage to state plausibly that the entities may be mere instrumentalities of each other. *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 450 F. Supp. 2d 757, 761 (E.D. Mich. 2006) (observing that whether an "alleged controlling parent-subsidiary relationship exists in actuality is a matter better left up to the discovery process."). And the plaintiffs have sufficiently alleged that the Lakeside entities engaged in fraudulent conduct by misleading the plaintiffs regarding their operations and shirking their PACA trust obligations. *See* Compl. ¶ 56-58. A breach of contract is sufficient to satisfy the "fraud or wrong" element of an *alter ego* claim. *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.,* 475 F.3d 783, 799-800 (6th Cir. 2007). And the plaintiffs allege that the defendants' conduct caused them to incur more than $1.3 million in damages. Compl. ¶ 59. These damages can constitute an unjust loss under Michigan law. *Servo*, 475 F.3d at 800. The plaintiffs have sufficiently pleaded a claim for that Lakeside USA and Lakeside Canada are each other's *alter ego*.

IV.

The plaintiffs have asked the Court to take judicial notice of certain adjudicative facts. Under Evidence Rule 201, the Court may do so if the fact is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The plaintiffs have asked the Court to take judicial notice of the defendants' PACA license information on file in the United States Department of Agriculture's PACA license directory; the defendant's demographic information on file with the Texas Comptroller of Public Accounts; the absence of records of any domestic bankruptcy proceeding on file by any of the defendants; an Ontario Corporate Profile Report for Lakeside, Produce, Inc.; and a PACA trust claim filed by

"Lakeside Produce, Inc." in a 2009 bankruptcy proceeding in the Northern District of Illinois. These records are not reasonably subject to question.  And federal "courts can take notice of the actions of other courts."  *In re Omnicare, Inc. Sec. Litig.,* 769 F.3d 455, 468 (6th Cir. 2014) (citations and quotations omitted).  The Court has taken notice of these items in reaching the decisions in this opinion.

The plaintiffs also ask the Court to take notice of various records from the United States Department of Agriculture obtained via the Freedom of Information Act.  In their motion, the plaintiffs direct the Court to approximately 60 pages of USDA records pertaining to the defendants. These materials are not referenced in the plaintiffs' complaint.  Rule 201 states that a court may judicially notice "a fact," but it is not clear what fact the plaintiffs would like the Court to take notice of from these documents, which include emails, checks, and PACA license applications. The Court declines to take judicial notice at this stage of the case.

On a different note, the Court stayed discovery in this case pending a determination of these motions to dismiss.  *See* ECF No. 35.  That stay will be dissolved and the Court will enter a case management order after holding a conference with the parties.

V.

For the reasons discussed above, the Court has subject matter jurisdiction over the coercive action against all defendants, the proceeding against Lakeside Canada is not barred by any stay provisions in the Canadian bankruptcy or by international comity, there is no need to join the Bank of Montreal or other putative plaintiffs to adjudicate the PACA claims, and the plaintiffs' complaint states viable claims against all the defendants.  The Court concludes that it may take judicial notice of certain records that have been considered in the determination of these motions.

Accordingly, it is **ORDERED** that the motion to dismiss the complaint by defendant Lakeside Produce USA, Inc. (ECF No. 12) is **DENIED**.

It is further **ORDERED** that the motions to dismiss the complaint by defendants Christopher R. Cervini and Bakhos Antonios (ECF No. 24, 25, 32, 33) are **DENIED**.

It is further **ORDERED** that the plaintiffs' motion for judicial notice (ECF No. 17) is **GRANTED IN PART**.

It is further **ORDERED** that the order staying discovery (ECF No. 35) is **DISSOLVED**. The parties shall exchange initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1) **on or before January 19, 2024**.

Counsel for the parties shall appear for a case management conference under Federal Rule of Civil Procedure 16 at a date and time to be established by the Court's notice.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 29, 2023